UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MR. JEREMY LEVIN and DR. LUCILLE LEVIN,<br><br>             Plaintiffs,<br><br>v.<br><br>650 FIFTH AVENUE COMPANY, ALAVI FOUNDATION, BANK MELLI IRAN, ASSA CORPORATION, and ASSA COMPANY LIMITED.<br><br>             Defendants. | Case No.:    17-959<br><br>**COMPLAINT FILED PURSUANT TO N.Y. C.P.L.R. § 5225** |

Plaintiffs Mr. Jeremy Levin (hereinafter "Mr. Levin") and Dr. Lucille Levin (hereinafter "Dr. Levin"), (collectively "Plaintiffs" or "Judgment Creditors" or "Levins"), by and through Plaintiffs' attorneys Howarth & Smith, complain and allege as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1. Plaintiffs bring this action to obtain an order and judgment, pursuant to Fed. R. Civ. P. 69, N.Y. C.P.L.R. §§ 5225 and 5227; 28 U.S.C §§ 1610(a) and 1610(b); and Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002) (codified at 28 U.S.C. §1610 note), requiring 650 Fifth Avenue Company ("Fifth Avenue Company"), Alavi Foundation ("Alavi"), Bank Melli Iran ("Bank Melli"), ASSA Corporation ("ASSA Corp."), and ASSA Company Ltd. ("ASSA Co."), (collectively "Defendants") each and all agents and instrumentalities of the Islamic Republic of Iran ("IRC"), to turnover real and personal property of IRC, its agencies and instrumentalities, including but not limited to, the Iranian Ministry of Information and Security ("MOIS"), the Iranian Islamic Revolutionary Guard Corp ("IRGC"), their

1

agencies and instrumentalities, and entities owned or controlled directly or indirectly by IRC, MOIS, or IRGC (hereinafter referred to collectively as "Iran" or "Judgment Debtors"), including but not limited to property listed in Exhibit A hereto (hereinafter referred to as "Property" or "Properties").

2. On February 6, 2008, the United States District Court for the District of Columbia entered judgment in the amount of $28,807,719 against Iran in favor of Plaintiffs in an action brought under 28 U.S.C. § 1605(a)(7). *Levin v. Islamic Republic of Iran,* 529 F. Supp. 2d 1, 5-13 (D.D.C. 2007) ("Underlying Action"). Pursuant to 28 U.S.C. §1961, Plaintiffs are also entitled to post judgment interest at a rate of 2.23%, which is computed daily to the date of payment and is compounded annually.

3. Plaintiffs gave notice of the entry of judgment to Iranian Judgment Debtors through court and diplomatic channels on October 14, 2008, pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1608(e). *See* Exhibit B, Letter from William P. Fritzlen to Nancy Mayer-Whittington, dated January 16, 2009.

4. On April 20, 2009, Judgment Creditors registered their judgment (the "Judgment") in this Court, Judgment Number 09,0732, Docket Number M18-302. *See* Exhibit C, Certification of Judgment for Registration in Another District, *Levin v. Islamic Republic of Iran,* No. Ml8-302 (S.D.N.Y. Apr. 20, 2009).

5. The claims in the Underlying Action arose out of the Judgment Debtors' support and involvement in the March 7, 1984 kidnapping of Mr. Levin in Beirut, Lebanon in which Mr. Levin was held captive and tortured for 343 days by Hezbollah terrorists that were provided material support and assistance by the Judgment Debtors.

2

6. The Judgment was obtained pursuant to 28 U.S.C. §§ 1610 (a)(7) and §1605(a)(7) of FSIA, a private federal cause of action for personal injury or wrongful death against a foreign state that is or was a state sponsor of terrorism.

7. In the proceeding filed before the Honorable Robert P. Patterson, Jr. on June 26, 2009, entitled "Complaint Pursuant to N.Y. C.P.L.R. § 5225," and in the proceeding filed on June 8, 2010, *Peterson v. Islamic Republic of Iran, et al.*, Case No. 10 Civ 4518, and in the proceeding filed on June 23, 2014, *Levin v. Bank of New York, et al.*, Case No. 09 Civ. 5900, Plaintiffs partially satisfied their judgment. But as of February 8, 2017, there remains an unpaid balance on the judgment remaining to be collected in the amount of $34,438,220.85, including post judgment statutory interest.

8. On January 3, 2017, Plaintiffs received a Court-ordered Writ of Execution from this Court against real and personal property of the Judgment Debtors and their agencies and instrumentalities, including but not limited to property in Exhibit A hereto.

9. Pursuant to C.P.L.R. § 5230 (made applicable here by Fed. R. Civ. P. 69), On February 1, 2017, Plaintiffs served a Writ of Execution issued by this Court on the United States Marshal for the Southern District of New York, for service and levy upon Defendants.

10. By serving the Writs of Execution on the U.S. Marshal, Plaintiffs obtained a priority lien on all personal property in New York County subject to execution and attachment in satisfaction of their judgment. *See* David D. Siegel, Practice Commentaries, C.P.L.R. § 5230:1 ("[W]ith the simple act of delivering an execution to the sheriff, the creditor secures a lien on the debtor's personal property in the county even

3

though neither the creditor nor the sheriff know of any.").

11.    Pursuant to 28 U.S.C. §1603, Defendants are agencies or instrumentalities of Iran and are therefore liable upon the Judgment pursuant to section 201 of TRIA, 28 U.S.C. §§1605(a)(7), 1606, and 1610, or Defendants represent or are holding interests of Iran or its agencies or instrumentalities.  In the alternative, Defendants are the alter-egos of Iran, or its agencies or instrumentalities.  In addition, Defendants are liable to Plaintiffs on the Judgment by virtue of principles of equity, U.S. common law, and international law.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction in this action pursuant to 28 U.S.C. §§1330, 1331, 1332, 1441, and 1601, Section 201 of TRIA, and the Court's inherent ancillary enforcement jurisdiction, since this is an action to enforce a federal judgment.

13.    This Court has personal jurisdiction over Defendants, pursuant to Fed. R. Civ. P. 4(k).

14.    Venue is proper in this matter, pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

## THE PARTIES AND BACKGROUND

15.    Plaintiffs are United States citizens residing in the United States.  Plaintiff Mr. Jeremy Levin was a journalist who was kidnapped and held hostage in Lebanon for

343 days. Plaintiff Dr. Lucille Levin, wife of Mr. Levin, attempted to free Mr. Levin from his captors by raising awareness of the hostage situation and by engaging foreign administrations while undergoing severe emotional trauma and financial stress. *See Levin v. Islamic Republic of Iran*, 529 F. Supp.2d 1 (D.D.C. 2007).

16.     Plaintiffs brought suit in the Underlying Action under FSIA in the United States District Court for the District of Columbia against Iran and various Iranian government entities for their provision of training and other material support and assistance to the Hezbollah terrorists who carried out the kidnapping. *Levin v. Islamic Republic of Iran*, 529 F.Supp.2d 1 (D.D.C. 2007).

17.     Plaintiffs are judgment creditors in the Underlying Action. Defendants are judgment debtors in the Underlying Action.

18.     Upon information and belief, at all relevant times Defendant Fifth Avenue Company was a partnership organized under the laws of the State of New York, the partners of which were Defendants Alavi and ASSA Corp.

19.     Upon information and belief, at all relevant times Defendant ASSA Corp. was a corporation incorporated under the laws of the United States of New York in 1989.

20.     Upon information and belief, at all relevant times ASSA Corp. was wholly owned by Defendant ASSA Co.

21.     Upon information and belief, at all relevant times Defendant ASSA Co. was a corporation domiciled in Jersey, Channel Islands, United Kingdom, and is wholly owned by Defendant Bank Melli.

22.     Defendants are engaged in continuous and on-going business transactions

5

in the State of New York and are proper garnishees under the civil Practice Laws and Rules.

23. On November 16, 2009, the United States of America filed a Verified Amended Complaint (*US v. All Right, Title and Interest of ASSA Corporation, et al.*, Civ. No. 08-10934) (S.D.N.Y.) (the "Government Action") seeking the forfeiture of certain real and personal property.

24. Section 201 of TRIA provides the following:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), section 201(a).

25. Iran is a foreign state designated as a state sponsor of terrorism under the Export Administration Act of 1979, and the Underlying Judgment was therefore entered against a "terrorist party" as defined in section 201(d)(4) of TRIA.

26. Further, section 1610 of FSIA defines the types of property "subject to execution or attachment in aid of execution" of judgments by United States citizens who are victims of state sponsors of terrorism, such as Judgment Debtor, Iran. Section 1610 provides in pertinent part:

> (f)(1)(A) Notwithstanding any other provision of law, … any property

6

with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.

And,

(g)(1) … [T]he property of a foreign state against which a judgment is entered under section 1605A [and its predecessor 1605 (a)(7)], and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of--

> (A) the level of economic control over the property by the government of the foreign state;
>
> (B) whether the profits of the property go to that government;
>
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
>
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. §1610 (2009) (emphasis added).

    27.    The United States Department of the Treasury, Office of Foreign Assets Control ("OFAC") identified Iran as including:

> (a) The state and the Government of Iran, as well as any political

>subdivision, agency, or instrumentality thereof;
>
>(b) Any entity owned or controlled directly or indirectly by the foregoing;
>
>(c) Any [individual or entity] to the extent that such [individual or entity] is, or has been, or to the extent that there is reasonable cause to believe that such [individual or entity] is, or has been …acting or purporting to act directly or indirectly on behalf of any of the foregoing; and
>
>(d) Any person or entity designated by the Secretary of the Treasury as included within paragraphs (a) thorough (c) of this section.

31 C.F.R. § 560.304.

28. OFAC identify Bank Melli as an entity "owned or controlled by the Government of Iran." 31 C.F.R. Part 560, App. A.

29. On December 17, 2008, the Department of the Treasury identified ASSA Corp. and ASSA Co., as front companies created and controlled by Bank Melli to hold Bank Melli's interest in an office tower located at 650 Fifth Avenue, New York, New York (the "Building") in partnership with Alavi through Fifth Avenue Company.

30. On June 28, 2005, Executive Order 13382 was issued by the President pursuant to the authority granted to him under the International Emergency Economic Powers Act ("IEEPA").

31. Section 1 of Executive Order 13382 provides that all "property and interests in property" of entities listed in the order or subsequently designated by the Treasury Department "that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons, are blocked and may not be transferred, paid, exported, withdrawn, or otherwise

8

dealt in." Executive Order 13382, 70 Fed. Reg. 38567 (June 28, 2005).

32. OFAC added Bank Melli to the above list and blocked its assets on October 25, 2007, and further added ASSA Corp. and ASSA Co. to the above list and blocked the assets of ASSA Corp., ASSA Co. on December 17, 2008. 31 C.F.R. 544.201.

33. The Treasury Department explained upon designating Bank Melli under Executive Order 13382 that "[a]s a result of our actions today, all transactions involving any of the designees and any U.S. person will be prohibited and any assets the designees may have under U.S. jurisdiction will be frozen."

34. Executive Order 13599 was issued by the President effective on February 6, 2012, pursuant to authority granted to him by IEEPA, the National Emergencies Act (50 U.S.C. §1601 *et seq.*), section 1245 of the National Defense Authorization Act for Fiscal Year 2012 (Public Law 112-81) and 3 U.S.C. §301.

35. Executive Order 13599 provides in part that all property and interests in property of the Government of Iran that are in the United States are blocked.

36. Executive Order 13599 defines Government of Iran, as "the Government of Iran, any political subdivision, agency, or instrumentality thereof, including the Central Bank of Iran, and any person owned or controlled by, or acting for or on behalf of, the Government of Iran."

37. ASSA Corp. has been providing numerous services to Bank Melli in violation of IEEPA. Since at least 1990, ASSA Corp has regularly and repeatedly transferred rental income generated from Fifth Avenue Company to Bank Melli through ASSA Co., followed Bank Melli's instructions with regard to ASSA Corp.'s business

9

affairs and the management of its investment, reported to Bank Melli on its financial situation and business dealings, and managed the affairs of ASSA Corp. for the benefit of Bank Melli.

38. Alavi is a not-for-profit corporation existing under the laws of the State of New York and, upon information and belief, is owned or controlled by the Government of Iran. Until recently, Iran exercised day-to-day control over the operations of Alavi by and through its former president, Farshid Jahedi ("Jahedi"), a convicted felon under the laws of the United States. In addition, the United States Department of Justice has determined that Defendant Alavi is controlled by Iran and has been providing numerous services to Iran in violation of IEEPA, including managing a commercial building, the Building, for Iran, running a charitable organization for Iran, and transferring funds from Fifth Avenue Company to Bank Melli.

39. On December 30, 2009, Jahedi pleaded guilty to destroying a document, with the intent to impair that document's availability for use in an official proceeding, in violation of 18 U.S.C. §§1512(c)(1) and (2), and obstruction of justice in violation of 18 U.S.C. §§1502. *See United States v. Farshid Jahedi,* 09 Cr. 460 (SAS).

40. In his allocution, Jahedi stated:

> On December 18, 2008, I knew there was a pending grand jury investigation and that a subpoena had been issued by the grand jury. I also knew that the grand jury was investigat[ing] financial transactions between ASSA Corporation and the Alavi Foundation. On that day, I tore up and discarded handwritten and typed notes and a copy of a letter which concerned the Alavi Foundations' potential purchase of ASSA Corporation's share of 650 Fifth Avenue. At the time I tore up and discarded the materials, I knew that the materials concerned the subject matter that the grand jury was investigating and that discarding

10

> the materials might prevent some of the information reflected in those materials from reaching the grand jury.

See transcript of Jahedi's December 30, 2009 allocution.

41. Moreover, Alavi never received a license from the United States Department of the Treasury to operate and manage a commercial building for Iran, operate and manage a charitable organization for Iran, or to provide services to Bank Melli through ASSA Corp. And, neither Bank Melli, ASSA Corp., nor ASSA Co. ever received such a license. This is all consistent with the multiple sources publicly reporting that Alavi is a front for Iran in the United States and that it has longstanding connections with Iran and Iran's sponsorship of terrorist activities.

42. The allegations in the above paragraphs are fully documented by the United States government in the Amended Complaint in the Government Action, and are hereby incorporated by reference in this Complaint. *See* Exhibit D.

43. The facts, findings, and determinations contained in the Amended Complaint and statement of facts in the Government Action are incorporated by reference as if fully set forth herein.

## **FIRST CLAIM FOR RELIEF – New York Code of Civil Procedure Rules §§ 5225 and 5227**

44. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

45. The New York Code of Civil Procedure ("N.Y.C.P.R.") §5225(b) provides, in relevant part, that:

11

> Upon a special proceedings[1] commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal propelty, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

46. Plaintiffs obtained a judgment against Iran and its agencies and instrumentalities in the Underlying Action, where Iran was found liable to Plaintiffs for damages in the amount of $28,807,719 plus post judgment statutory interest, which as of February 8, 2017 amounted to a total of $34,438,220.85, including post judgment statutory interest.

47. The Properties held by Defendants are "money or other personal property in which the judgment debtor has an interest" for purposes of N.Y.C.P.R §5225(b).

48. Alternatively, the Properties held by Defendants are "a transferee of money or other personal property from the judgment debtor." *Id.*

49. N.Y. C.P.R §5227 provides, in relevant part, that:

> Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a

---

[1] Because Fed.R.Civ.P. 2 provides that a civil action is the only form of action in federal civil practice, the fact that a judgment creditor does not seek turnover through a special proceeding - a proceeding which is unknown in federal courts - is immaterial. Northern Mariana Islands v. Millard, 287 F.R.D. 204, 208 (S.D.N.Y. 2012) citing Saregama India, Ltd. v. Mosley, 2012 WL 955520 (S.D.N.Y. Mar. 20, 2012).

judgment be entered against such person in favor of the judgment creditor.

50. Defendants are entities who "[are] or will become indebted to the judgment debtor" for purposes of §5225(b).

51. Therefore, under §§ 5225(b) and 5227, by operation of Fed. R. Civ. P. 69, the Plaintiffs are entitled to the Properties to satisfy the judgment as to damages issued by this Court in favor of Plaintiffs in the amount of $28,807,719, plus post judgment statutory interest.

**SECOND CLAIM FOR RELIEF – Terrorism Risk Insurance Act 2002, § 201**

52. The above paragraphs are hereby incorporated by reference as if fully set forth in.

53. TRIA contains provisions regarding the treatment of terrorist assets that are blocked by the United States. These provisions explicitly permit plaintiffs who have obtained a judgment against a state sponsor of terrorism in an action brought under 28 U.S.C. § 1605(a)(7) (now codified at § 1605A) to access these blocked assets to satisfy their judgment.

54. Section 201(a) of TRIA states that "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of Title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment."

55. The Islamic Republic of Iran has been designated as a state sponsor of terrorism by the U.S. Department of State since January 19, 1984.

56. On February 6, 2008, Plaintiffs obtained a judgment as to liability against Iran in the Underlying Action.

57. A "blocked asset" for purposes of TRIA is "any asset seized or frozen by the United States under section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)." TRIA §201(d)(2)(A).

58. The Verified Amended Complaint filed by the United States in the matter of Re 650 Fifth Avenue and Related Properties, alleges that the underlying civil forfeiture case "relates to violations of regulations and Executive Orders issued pursuant to the International Emergency Economic Powers Act." *See* Verified Amended Complaint of the United States, attached hereto as Exhibit D. The United States, via the filing of its Verified Complaint and Verified Amended Complaint, blocked the assets of all Defendants in this action due to Iran's ownership and control of these entities through the Government of Iran, and agencies and instrumentalities of Iran such as Bank Melli.

59. Further, on the same day that the Verified Complaint was filed, the Properties were blocked by virtue of OFAC's designation of ASSA Corp. and ASSA Co. Limited as Specially Designated Nationals ("SDN") due to their association with Bank Melli.

60. The Properties in this case are "blocked assets" of a "terrorist party" for the purposes of TRIA.

61. Therefore, under TRIA, the Properties are subject to execution, or attachment in aid of execution, to satisfy the unpaid portion of the judgment registered in this Court in favor of the Plaintiffs in the amount of $28,807,719, plus post judgment statutory interest.

## THIRD CLAIM FOR RELIEF – Foreign Sovereign Immunities Act 1976 § 1610(a)

62. The above paragraphs are hereby incorporated by reference as if fully set forth herein.

63. Section 1610(a)(7) of the FSIA states, in relevant part, that:

> (a) The property in the United States of a foreign state ... used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if-
>
> …
>
> (7) the judgment relates to a claim for which the foreign state is not immune under section 1605A or section 1605 (a)(7) (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved with the act upon which the claim is based.

64. The Properties are "property in the United States of a foreign state . . . used for a commercial activity in the United States" for purposes of §1610(a)(7). 28 U.S.C. §1610(a).

65. Consequently, the Properties are not "immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States" since the Plaintiffs hold a judgment against Iran that "relates to a claim for which the

foreign state is not immune under section 1605A ... regardless of whether the property is or was involved with the act upon which the claim is based." 28 U.S.C. §1610(a)(7).

66. Therefore, pursuant to the FSIA §1610(a), the Properties are subject to execution, or attachment in aid of execution, to satisfy the unpaid portion of the judgment registered in this Court in favor of the Plaintiffs in the amount of $28,807,719, plus post judgment statutory interest.

## FOURTH CLAIM FOR RELIEF - Foreign Sovereign Immunities Act 1976 §1610(b)

67. The above paragraphs are hereby incorporated by reference as if fully set forth Section 1610(b)(3) of the FSIA states, in relevant part, that:

> (b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if-
>
> (3) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605A of this chapter or section 1605 (a)(7) of this chapter (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved in the act upon which the claim is based.

68. The Properties are "property in the United States of an agency or instrumentality of a foreign state ... engaged in commercial activity in the United States" for purposes of §1610(b)(7). 28 U.S.C. §1610(b).

69. Consequently, the Properties are not "immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States"

since the Judgment Creditors hold a judgment against Iran that "relates to a claim for which the foreign state is not immune under section 1605A ... regardless of whether the property is or was involved with the act upon which the claim is based." 28 U.S.C. §1610(b).

70. Therefore, pursuant to the FSIA §1610(b), the Properties are subject to execution, or attachment in aid of execution, to satisfy the judgment registered in this Court in favor of the Plaintiffs in the amount of $28,807,719, plus post judgment statutory interest.

### FIFTH CLAIM FOR RELIEF – Ownership, Control and Alter Ego

71. Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if they were more fully set forth at length herein.

72. Upon information and belief, Defendants are owned and controlled by Iran or Iran's agencies or instrumentalities, and/or are alter egos of Iran or their agencies and instrumentalities, and/or are dominated by Iran.

73. Iran acts through Defendants in carrying out unlawful commercial and other activities in the United States.

74. Pursuant to section 201 of TRIA, the blocked assets of Iran, including the blocked assets of any agency or instrumentality of Iran, are subject to execution or attachment to satisfy the Judgment.

75. Defendants assets are blocked assets of Iran or its agencies and instrumentalities.

76. Defendants' Properties are therefore subject to execution and attachment to

satisfy the Plaintiff's Judgment against Iran in the amount of $28,807,719, plus post judgment statutory interest.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully demand:

(i)      A judgment be entered in their favor and against Defendants.

(ii)      Defendants turnover property with a value of or otherwise pay $34,438,220.85, including post judgment statutory interest, to Plaintiffs from the real and personal property held by Defendants, including but not limited to Property listed in Exhibit A attached hereto.

Dated: 2/8, 2017

HOWARTH & SMITH
DON HOWARTH
SUZELLE M. SMITH
TOMAS S. GLASPY

By: _____
Suzelle M. Smith (Reg No. 5376900)
Don Howarth
Tomas S. Glaspy
523 West Sixth Street, Suite 728
Los Angeles, California 90014
(213) 955-9400

*Attorneys for Plaintiffs*
*Mr. Jeremy Levin and Dr. Lucille Levin*