EXHIBIT G

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 22, 2016

**BY EMAIL AND ECF**
ForrestNYSDChambers@nysd.uscourts.gov

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1950
New York, New York 10007

    Re:    **In re 650 Fifth Avenue and Related Properties,**
            **08 Civ. 10934 (KBF)**

Dear Judge Forrest:

    The Government writes in opposition to the motion letter motion of claimants 650 Fifth Avenue Company ("the Partnership") and Alavi Foundation ("Alavi" and, collectively, "Claimants") dated August 3, 2016, to modify the Protective Order and Monitor Order in this matter. Claimants ask the Court to vacate certain aspects of orders entered October 23, 2013 (Dkt. Entry 995) and November 22, 2013 (Dkt. Entry 1023) that, *inter alia*, empowered the Monitor to act as Interim Trustee of the Building and bank accounts associated with the Building with certain enumerated powers; removed Alavi from having a management role in the Building; prohibited disbursements from the Building's income to Assa Corporation; and authorized disbursements from the Building's income to Alavi for certain identified purposes, including payments for necessary safety or maintenance repairs at other Alavi-owned properties. By letter dated today, the Monitor and Interim Trustee opposed Alavi's motion, concluding that maintaining control of the Building by a court-appointed trustee is "essential to maintaining and increasing the value of the asset during the pendency of this litigation."

**A.    BACKGROUND**

    The Court is intimately familiar with the procedural posture of this matter, so the relevant facts will be only briefly summarized here. On or about December 17, 2008, the United States commenced this civil action seeking forfeiture of all of Assa Corporation's, Assa Company Limited's (collectively, "Assa"), and Bank Melli Iran's ("BMI") right, title, and interest in the Partnership, including the Building and related bank accounts. That same day, the Court issued a Post-Complaint Protective Order Pursuant to 18 U.S.C. § 983(j)(1) prohibiting anyone with knowledge of the Order from directly or indirectly (1) transferring, selling, assigning, pledging,

hypothecating, encumbering, or disposing of in any manner, causing to be transferred, sold, assigned, pledged hypothecated, encumbered, disposed of in any manner, or in any way taking or causing to be taken any action that would depreciate, damage or diminish the value of the Building or (2) destroying documents. The Order further provided that the Jones Lang LaSalle, the management company, and 650 Fifth Avenue Company are to maintain all books and records in their possession.

On or about November 12, 2009, an amended civil forfeiture complaint was filed seeking forfeiture of, among other properties, all right, title, and interest of Assa, BMI, and Alavi in the Partnership, including but not limited to, the Building and the contents of certain Partnership bank accounts, as well as certain accounts and properties owned by Alavi (the "Alavi Real Properties"). On or about November 12, 2009, the Court entered a Restraining Order and Order for Appointment of Substitute Custodian for Restrained Accounts (the "Restraining Order") (Dkt. Entry 46), which restrained certain Partnership bank accounts (collectively, the "650 Bank Accounts") and designated the Management Company as a Substitute Custodian for the accounts.

On or about April 28, 2010, the Court entered a Consent Order For Appointment of Monitor Pursuant to 18 U.S.C. § 983(j) (the "Monitor Order") (Dkt. Entry 136) appointing Kathleen A. Roberts as monitor (the "Monitor"). The Monitor Order ordered and empowered the Monitor, among other things, to review and approve disbursement, agreements, and other activities of the Partnership in order to preserve the value of the Partnership and the defendant real properties for forfeiture; and to review and approve any decisions or other actions by Alavi pursuant to its obligations under the relevant partnership agreement. On or about June 19, 2012, the Court entered an Order Modifying Protective Order Pursuant to 18 U.S.C. § 983(j)(1), *inter alia*, to permit the Partnership, upon approval of the Monitor, to enter into an agreement with management companies other than Jones Lang LaSalle. (Dkt. Entry 265).

On September 16, 2013, the Court entered an opinion and order granting the Government's motion for partial summary judgment as to the forfeitability of Alavi's, Assa's, and the Partnership's interests in the Building and certain bank accounts. (Dkt. Entry 865). On April 14, 2014, the Court entered an opinion and order holding that Alavi's interests in the remaining defendant properties, including the Alavi Real Properties and certain bank accounts, were also subject to forfeiture. (Dkt. Entry 1125).

On October 23, 2013, the Court entered an order modifying the Protective Order and Monitor Order (Dkt Entry 995) by appointing the Monitor as Interim Trustee, for the principal purpose of allowing the Monitor to cause the Partnership to enter into a master lease agreement. The Court observed that "Judge Roberts has effectively and appropriately monitored the Building and bank accounts to date. Moreover, she has the benefit of familiarity with the Building and bank accounts, as well as the benefit of neutrality as between the Government and Alavi." (*Id.* at 2). The Court noted the likelihood that Alavi would require an OFAC license in order lawfully to provide services on behalf of the Building. (*Id.*). On November 22, 2013, the Court entered an opinion and order further modifying the Monitor and Protective Orders by, *inter alia*, prohibiting disbursements to Assa Corporation and permitting disbursements to Alavi for identified purposes. (Dkt. Entry 1023).

The appointment and actions of the Monitor have been licensed by the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC") pursuant to OFAC's license authorizing the initiation and prosecution of the forfeiture action and related judicial proceedings,[1] and the professionals retained by the Monitor to provide services in connection with the operation and improvement of the Building have applied for and received individual licenses from OFAC.

On July 20, 2016, a Second Circuit panel vacated partial summary judgment and remanded the case to this Court for further proceedings with respect to (1) Claimants' motion to suppress certain evidence obtained pursuant to a criminal search warrant and (2) Claimants' statute of limitations defense; and (3) finding a triable issue of fact with respect to Alavi's knowledge, following 1995, that Assa was owned and controlled by BMI. *See In re 650 Fifth Avenue and Related Properties*, --- F.3d ----, 2016 WL 3913403 (2d Cir. July 20, 2016). The Second Circuit held that this Court correctly found that there was no triable issue of fact that BMI in fact owned and controlled Assa throughout the relevant time period, and expressed no view on whether Assa's knowledge was properly imputed to the Partnership or whether Alavi itself was controlled by the Government of Iran. *Id.* at n. 20, 26.

## B.   DISCUSSION

Alavi argues that the Protective and Monitor Orders should be modified to revert to the status prior to the September 16, 2013, summary judgment decision in light of the Second Circuit's opinion. Alavi's motion should be denied for several reasons.

As the Monitor's letter makes clear, the existing Protective and Monitor orders are necessary to maintain and preserve the value of the Building and other properties pending the conclusion of these proceedings. As the Monitor states, prior to her appointment as Interim Trustee "the Building's leasing brokers struggled to attract prospective tenants, and were forced to negotiate below-market rents." The Building's leasing activities have been handled by qualified real estate professionals selected and supervised by the Monitor, who are prepared to testify that "in dealing with questions from prospective tenants regarding the Building's ownership and management, the ability to provide assurances that management decisions are being made by a court-appointed trustee has been a crucial factor in the team's ability to overcome concerns generated by the pending litigation and the team's success in attracting new

---

[1] On December 15, 2008—near the time the original Complaint in this matter was filed—OFAC issued a license to the U.S. Attorney's Office, among others, authorizing the Government "to engage in transactions in property or property interests of Assa Corporation . . . . in connection with any civil or criminal investigation, . . . including forfeiture proceedings." Assa's principal asset is its interest in 650 Fifth Avenue Company, the owner of the Building. We understand that OFAC considers this license to authorize the forfeiture proceedings against the Building and any and all judicial action in these proceedings with respect to the Building, including forfeiture judgments and protective orders. Accordingly, the protective order and monitor order are within the scope of an existing OFAC license and properly allow the Monitor to authorize disbursements and expenditures for the purpose of maintaining or improving the Building.

tenants." The Monitor has on several occasions been called upon to speak personally with representatives of prospective tenants to assuage concerns based on her court-entrusted responsibilities and authorities. The Monitor draws upon her six years of efforts to preserve and increase the value of the Building to "strongly recommend" that the management of the Building continue to be in the care of a court-appointed trustee.[2]

Moreover, though the Second Circuit has remanded for continued proceedings, that court affirmed this Court's determination that Assa has at all times been owned and controlled by BMI—"the record evidence convincingly demonstrates that Bank Melli, and therefore the Government of Iran, continued to control Assa after 1995, and admits no genuine issue of triable fact on that question." (Slip op. at 54). Nor did the panel take issue with the compelling evidence that Alavi knew of and participated in the scheme to convert BMI's mortgage interest in the Building into a concealed partnership interest in the Partnership. Accordingly, though the Circuit found a triable issue of fact as to Alavi's continued knowledge of Assa's true character after 1995, there is nonetheless no question that Alavi was in fact partners with a BMI-controlled front company for approximately twenty years prior to the filing of the forfeiture complaint. Alavi's conduct as managing partner during that time, then, betrays at the very least gross negligence or recklessness as to the unlawful character of its partner. Moreover, the record contains strong evidence that Alavi in fact knew this to be the case the entire time, demonstrating the Government's likelihood of success in showing that Alavi knew that its, the Partnership's, and Assa's conduct violated this nation's national security controls. This extended course of conduct also undermines any contention that Alavi is a proper manager of any of the defendant properties pending the conclusion of these proceedings.

Finally, Alavi likely would require an OFAC license to provide services to the Building and the Partnership, which still has Assa as a partner. The Monitor and her team of professionals already are appropriately licensed.

---

[2] After the original Monitor order was entered, Alavi underwent a wholesale change of board membership. Its present board has never managed the defendant properties at issue and has no familiarity or experience in that role.

   In short, the existing Monitor and Protective Orders are appropriate and necessary to maintain the value of the defendant properties during the pendency of these proceedings. 18 U.S.C. § 983(j). Alavi's motion is not made in a vacuum, and no speculation is needed to assess the impact of its requested relief: the Court has the benefit of six years of diligent and professional stewardship by the Monitor as well as the expert opinions of the Monitor and her staff of real estate professionals. Alavi's requested modification would threaten the impairment of the value of assets subject to forfeiture and undermine the work that the Monitor and her team have undertaken to preserve and improve that value. Nor is there any basis to permit the Building's income, which is itself the proceeds of property—the Building—subject to forfeiture,[3] to be dissipated on expenditures beyond the categories of expenses currently permitted by the Court's existing orders, which, among other things, allow Alavi to receive disbursements for (a) legal fees to continue to press its and the Partnership's claims in this action and related proceedings and (b) necessary safety or maintenance repairs for the defendant real properties. Alavi's motion should be denied.

                 Respectfully submitted,

                 PREET BHARARA
                 United States Attorney for the
                 Southern District of New York

           By:  */s/ Michael D. Lockard*
              Michael D. Lockard
              Martin S. Bell
              Daniel Tracer
              Assistant United States Attorneys
              (212) 637-2193/2463/2329

cc:  Counsel of record (via ECF)

---

[3] Alavi asserts that income received from the Building is not "criminally derived" if received under the Monitor's trusteeship, but this is false. The Building is property involved in money laundering or traceable to property involved in money laundering, 18 U.S.C. § 981(a)(1)(A), and property constituting or derived from proceeds traceable to violations of the IEEPA, 18 U.S.C. § 981(a)(1)(C); and thus income from the Building is in turn traceable to such violations and also subject to forfeiture under these same provisions.