UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LUCILLE LEVIN and SUZELLE M.
SMITH, TRUSTEE OF THE JEREMY
ISADORE LEVIN 2012 REVOCABLE
TRUST, AS AMENDED,

               Plaintiffs,

-against-

650 FIFTH AVENUE COMPANY, ALAVI
FOUNDATION, BANK MELLI IRAN,
ASSA CORPORATION, AND ASSA
COMPANY LIMITED,

               Defendants.

No. 17-CV-959 (LAP)

OPINION AND ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendants Alavi Foundation and

650 Fifth Avenue Company's motion to dismiss Plaintiffs' Amended

Complaint ("AC").[1] Plaintiffs oppose the motion.[2] For the reasons

below, Defendants' motion is GRANTED.

---

[1] (Alavi Foundation and 650 Fifth Avenue Company's Memorandum of
Law in Support of their Motion to Dismiss the Amended Complaint
for Lack of Subject Matter Jurisdiction and for Failure to State
a Claim ("Def. Br."), dated October 31, 2022 [dkt. no. 216];
Alavi Foundation and 650 Fifth Avenue Company's Reply Memorandum
of Law in Support of their Motion to Dismiss the Amended
Complaint for Lack of Subject Matter Jurisdiction and for
Failure to State a Claim ("Def. Reply"), dated December 14, 2022
[dkt. no. 221].)

[2] (Plaintiffs' Opposition to Alavi Foundation's and 650 Fifth
Avenue Company's Motion to Dismiss the Levin Amended Complaint
("Pl. Opp."), dated November 30, 2022 [dkt. no. 218].)

## I.   **Background**

Jeremy and Lucille Levin originally brought this turnover action pursuant to N.Y. C.P.L.R. §§ 5225 and 5227, Fed. R. Civ. P. 69, and Section 201 of the Terrorist Risk Insurance Act of 2002 ("TRIA") to seek to enforce a judgment obtained against the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Islamic Revolutionary Guard Corp (collectively, "Iran"). (See Complaint ("Compl."), dated February 8, 2017 [dkt. no. 1]; Judgment, dated February 6, 2008 [dkt. no. 1-3].) In March 2020, Defendants moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim. (See Defendants' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim, dated March 13, 2020 [dkt. no. 183].) Specifically, Defendants asserted that Plaintiffs had not adequately pled that Defendants were agencies or instrumentalities of Iran within the meaning of the Terrorism Risk Insurance Act of 2022 ("TRIA") or that the assets Plaintiffs sought were blocked assets under TRIA. (See dkt. no. 184 at 10-16.) In their Complaint filed in February 2017, Plaintiffs heavily relied on a forfeiture action brought by the Government against Defendants in December 2008. (See dkt. nos. 1 and 51 in 08-CV-10934.)

On August 26, 2022, the Court granted Defendants' motion to dismiss. (<u>See</u> August 2022 Order at 2 [dkt. no. 210].)[3] The Court found that the allegations in Plaintiffs' Complaint regarding Defendants' agency or instrumentality status amounted to "summaries from the Governments' complaint filed eight years earlier combined with conclusory recitals." (August 2022 Order at 12 (citations omitted).) The Court held that "[n]either the historical allegations from 2009 nor the conclusory present-tense recitals suffice to satisfy Plaintiffs' obligation" to allege that Defendants were "agencies or instrumentalities of Iran as of the filing of the Complaint." (<u>Id.</u> (citations omitted).) For the same reasons, the Court found that Plaintiffs failed to allege adequately that Defendants met the definition of the "Government of Iran" necessary to make Defendants' assets blocked assets under TRIA. (<u>Id.</u> at 13-14.) However, the Court granted Plaintiffs leave to replead pursuant to Fed. R. Civ. P. 15(a)(2). (<u>Id.</u> at 14.) On October 31, 2022, Plaintiffs filed their AC. (<u>See</u> dkt. no. 214.)

---

[3] The factual background and procedural history of this case is sufficiently stated in the Court's August 2022 Order. In this opinion, the Court will only restate the facts and procedural history relevant to deciding the present motion.

## II.  **Legal Standard**

### A. **Fed. R. Civ. P. 12(b)(1)**

The Court of Appeals has identified two types of Rule 12(b)(1) motions: facial and fact-based. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56-57 (2d Cir. 2016); see also Katz v. Donna Karan Co., 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." Carter, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." Id. Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[] facts that" establish subject matter jurisdiction. Id. (cleaned up). To make that determination, a court must accept the complaint's allegations as true "and draw all reasonable inferences in favor of the plaintiff." Id. at 57 (cleaned up). "[A] plaintiff asserting standing must 'allege facts that affirmatively and plausibly suggest that [she] has standing to sue' and courts 'need not credit a complaint's conclusory statements without reference to its factual context.'" Soule by Stanescu v. Conn. Ass'n of Schs., Inc., 57 F.4th 43, 50 (2d Cir. 2022) (quoting Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021)).

B. **Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6), a party may assert failure to state a claim as a defense. To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019) (citation omitted). In applying this standard, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 570. The Court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

C. **TRIA**

The FSIA provides that foreign states, as well as their agencies and instrumentalities, enjoy absolute immunity from suit and from the attachment and execution of their assets, and

these immunities fall away only under "certain express

exceptions." Rubin v. Islamic Republic of Iran, --- U.S. ----,

138 S. Ct. 816, 822 (2018). One such exception allows parties to

bring suits against foreign states based on acts of terrorism.

28 U.S.C. § 1605A(a). Another such exception, the TRIA, allows

FSIA judgment holders, such as the Levins, to enforce their

judgments using attachment or execution and provides that:

> Notwithstanding any other provision of law, and except
> as provided in subsection (b), in every case in which a
> person has obtained a judgment against a terrorist party
> on a claim based upon an act of terrorism, or for which
> a terrorist party is not immune under [28 U.S.C.
> § 1605(a)(7)], the blocked assets of that terrorist
> party (including the blocked assets of any agency or
> instrumentality of that terrorist party) shall be
> subject to execution or attachment in aid of execution
> in order to satisfy such judgment to the extent of any
> compensatory damages for which such terrorist party has
> been adjudged liable.

TRIA § 201(a), Pub. L. No. 107-297, 116 Stat. 2322 (codified at

28 U.S.C. § 1610 note) (emphasis added).

Section 201(a) of the TRIA provides "an independent basis

for subject matter jurisdiction over post-judgment execution and

attachment proceedings against property held in the hands of an

agency or instrumentality of the terrorist party, even if the

agency or instrumentality is not itself named in the judgment."

Kirschenbaum v. 650 Fifth Ave. & Related Props., 830 F.3d 107,

132 (2d Cir. 2016), abrogated on other grounds by Rubin, 138

S. Ct. at 821. TRIA Section 201(a) "clearly differentiates

between the party that is the subject of the underlying judgment
itself, which can be any terrorist party (here, Iran), and
parties whose blocked assets are subject to execution or
attachment, which can include not only the terrorist party but
also any agency or instrumentality of that terrorist party." Id.
(quoting Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 49
(2d Cir. 2010)) (cleaned up).

> To demonstrate that Defendants are "agencies or
> instrumentalities" of a terrorist party under the TRIA
> . . . Plaintiffs must show that each Defendant (1) was
> a means through which a material function of the
> terrorist party is accomplished, (2) provided material
> services to, on behalf of, or in support of the terrorist
> party, or (3) was owned, controlled, or directed by the
> terrorist party.

Kirschenbaum, 830 F.3d at 135. An entity's agency or
instrumentality status is a jurisdictional requirement that "is
determined at the time of the filing of the complaint" because
the jurisdiction of the Court "depends upon the state of things
at the time of the action brought." Kirschenbaum, 830 F.3d at
126 (quoting Dole Food Co. v. Patrickson, 538 U.S. 468, 478-80
(2003)) (cleaned up).

    In addition to the requirement that the assets sought to be
attached or executed upon are the assets of the terrorist party
or of the terrorist party's agency or instrumentality, the TRIA
requires that the assets sought to be executed or attached be
"blocked assets." Blocked assets are defined as "any asset

seized or frozen by the United States under Section 5(b) of the Trading With the Enemy Act . . . or under sections 202 and 203 of the International Emergency Economic Powers Act." TRIA § 201(d)(2), 116 Stat. 2322. Based on the Supreme Court's reasoning in Bank Markazi v. Peterson, 578 U.S. 212 (2016), the Court of Appeals in Kirschenbaum held that any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is "blocked" within the meaning of the TRIA. Kirschenbaum, 830 F.3d at 137-41. Executive Order 13,599 defined the "Government of Iran" to include a "political subdivision, agency, or instrumentality thereof, including . . . any person owned or controlled by, or acting for or on behalf of, the Government of Iran." Exec. Order No. 13,599, 77 Fed. Reg. 6659, 6660 (Feb. 5, 2012). The Treasury Department's Office of Foreign Assets Control promulgated regulations that implemented Executive Order 13,599 and further clarified that:

> The property and interests in property of persons who meet the definitions of the terms Government of Iran or Iranian financial institution are blocked pursuant to this section regardless of whether the names of such persons are published in the Federal Register or incorporated into the E.O. 13599 List or the SDN List.

31 C.F.R. § 560.211, Note 1 (2016).

III. **Discussion**

In August 2022, the Court dismissed Plaintiffs' original complaint because Plaintiffs failed to allege sufficient facts to make their claims regarding Defendants' agency or instrumentality status plausible as of the time Plaintiffs filed their complaint. (August 2022 Order at 12.) To survive another motion to dismiss, Plaintiffs were required to amend their complaint to include additional factual allegations that supported Plaintiffs' claims on the agency or instrumentality issue. In their opposition, Plaintiffs make several arguments for how the factual allegations in the AC meet this standard.

A. **28 U.S.C. § 1963 and Ancillary Jurisdiction Over TRIA Enforcement Claims**

First, Plaintiffs attempt to get around the need to plead factual allegations regarding Defendants' agency or instrumentality status by asserting that the Court has subject matter jurisdiction over the present case because Plaintiffs are pursuing a post-judgment claim to collect a judgment duly rendered by a federal court. (Pl. Opp. at 7-8.) Plaintiffs argue that the only requirements for subject matter jurisdiction over this post-judgment claim are that the underlying FSIA judgment be registered with the enforcing court under 28 U.S.C. § 1963 and a writ of attachment be ordered by the enforcing court under 28 U.S.C. § 1610(c) ("1610(c) writ"). (Id.) Because Plaintiffs

9

allege that they registered their judgment in this Court and that the Court issued a § 1610(c) writ, Plaintiffs conclude that they have alleged sufficient facts to support subject matter jurisdiction in this case. (Id. at 8.) Plaintiffs cite two cases in support of their conclusion: Rubin v. The Islamic Republic of Iran, 456 F. Supp. 2d 228, 230–31 (D. Mass. 2006), on reconsideration in part sub nom. Rubin v. Islamic Republic of Iran, 541 F. Supp. 2d 416 (D. Mass. 2008) ("This Court acquired jurisdiction over the present controversy when the plaintiffs registered here the judgment they had obtained against Iran . . . .") and Levin v. Bank of New York, No. 09-CV-5900 (RPP), 2011 WL 812032, at *6-7 (S.D.N.Y. Mar. 4, 2011)(the FSIA "provides the exclusive basis for subject matter jurisdiction over all civil actions against foreign state defendants, and governs the immunity of a foreign state in United States Courts . . . . [T]he procedures mandated by [FSIA] 1610(c) are in place to ensure that sufficient protection is afforded to foreign states that might be defendants in actions in United States Courts . . . .").

Plaintiffs similarly invoke the Court's ancillary jurisdiction to justify the Court's subject matter jurisdiction. (Pl. Opp. at 15.) Relying on Weininger v. Castro, Plaintiffs argue that a foreign instrumentality's waiver of sovereign immunity "'continues through post-judgment discovery and

collection of the money judgment,' and thus 'where subject matter jurisdiction under the FSIA exists to decide a case, jurisdiction continues long enough to allow proceedings in aid of any money judgment . . . .'" (Pl. Opp. at 16, citing Weininger v. Castro, 462 F. Supp. 2d 457, 489 (S.D.N.Y. 2006)(quoting First City, Tex. Hous., N.A. v. Rafidain Bank, 281 F.3d 48, 52-54 (2d Cir. 2002), cert. denied, 537 U.S. 813 (2002)); see also RCA Corp. v. Tucker, 696 F. Supp. 845, 850 (E.D.N.Y. 1988) ("[A]s to subject matter jurisdiction, the authorities are unanimous that a federal court maintains ancillary jurisdiction to enforce its own judgments, and that, under Rule 69, Fed. R. Civ. P., no independent jurisdictional basis is necessary to commence an enforcement proceeding against a garnishee not a party to the original suit.").

However, the Court of Appeals has held that the FSIA "provides the exclusive basis for subject matter jurisdiction over all civil actions against foreign state defendants, and therefore for a court to exercise subject matter jurisdiction over a defendant the action must fall within one of the FSIA's exceptions to foreign sovereign immunity." Weinstein, 609 F.3d at 47. TRIA expanded the reach of an exception from the FSIA's immunity to not just the judgment debtor/terrorist party named in the underlying judgment but, also, agencies and instrumentalities of the judgment debtor that were not named in

the underlying action. Id. at 48-50. The FSIA and TRIA
"'govern[]' attachment and execution proceedings" within the
meaning of Fed. R. Civ. P. 69 by "exempting or immunizing
certain types of property." Rubin, 456 F. Supp. 2d at 231. These
statutes impose additional requirements beyond those created by
28 U.S.C. § 1963 and the Court's inherent ancillary jurisdiction
that must be met before a federal court may exercise subject
matter jurisdiction over a foreign sovereign or its agencies and
instrumentalities. Indeed, the Rubin and Levin courts both
recognized this. See Rubin, 456 F. Supp. 2d at 231 ("Rule 69
therefore requires that the Court consider a particular
property's immunity status under FSIA (and similar statutes)
prior to allowing a judgment creditor to execute against it.");
cf. Levin, 2011 WL 812032, at *6 (quoting Weinstein, 609 F.3d at
48) ("The FSIA provides that 'where a valid judgment has been
entered against a foreign sovereign, property of that foreign
state is immune from attachment and execution except as provided
in the subsequent sections . . . .'"). Thus, Plaintiffs'
arguments in this section are unavailing.

### B. Pleading Requirements Under TRIA

In the alternative, Plaintiffs argue that Defendants
incorrectly interpret the kinds of factual allegations regarding
Defendants' agency or instrumentality status that are necessary
to bring a collection action under TRIA. (Pl. Opp. at 5.)

Plaintiffs contend that they are not required to plead facts
showing a continuing agency or instrumentality relationship
between Defendants and Iran as of the time they filed their
Complaint in this judgment enforcement action. (Id.) Instead,
Plaintiffs assert that "properties of a past agent of a
terrorist party, whose assets become blocked after a judgment
against Iran is entered and where it is pled that the assets
remain blocked," are subject to TRIA collection actions even
when a plaintiff "does not know specific current acts of
continuing agency by a principal and agent notoriously engaged
in secrecy and deception." (Id.) In support of this conclusion,
Plaintiffs cite Doe v. Ejercito De Liberacion Nacional, No. 15-
CV-8652 (LTS), 2017 WL 591193, at *2 (S.D.N.Y. Feb. 14, 2017),
aff'd sub nom. Doe v. JPMorgan Chase Bank, N.A., 899 F.3d 152
(2d Cir. 2018) (enumerating the elements of a TRIA action) and
Atchley v. AstraZeneca UK Ltd., 22 F.4th 204, 224 (D.C. Cir.
2022)(discussing aiding and abetting allegations sufficient for
an Anti-Terrorism Act complaint). (Pl. Opp. at 5-7.) Plaintiffs
assert that the additional factual allegations they pled in the
AC are sufficient to meet their pleading obligations because
they pled factual allegations regarding Defendants' agency or
instrumentality status close in time to when Plaintiffs filed
their complaint in the underlying action against Iran. (Id. at
12.)

Plaintiffs write that requiring them to plead agency or instrumentality facts close in time to when they filed their judgment enforcement Complaint would be at odds with the Court's ruling that the Peterson, Greenbaum, and Acosta turnover complaints alleged sufficient facts to survive a motion to dismiss, (see AC ¶ 43; In re 650 Fifth Ave. and Related Props., No. 08-CV-10934, [dkt. no. 286] (S.D.N.Y.)), and New York state law presuming the continuation of an agency relationship, (Pl. Opp. at 10, 13). Plaintiffs note that in Calderon-Cardona v. Bank of New York Mellon, 770 F.3d 993 (2d Cir. 2014), the Court of Appeals held that a sovereign state must be a state sponsor of terrorism at the time of the entry of judgment in the underlying action for its assets or those of its agencies or instrumentalities to be blocked assets under TRIA. Id. at 999. Plaintiffs argue that the reverse is also true: if at the time of the original judgment, Iran was a state sponsor of terrorism, its blocked assets and those of its agencies are subject to a TRIA action. (Pl. Opp. at 13, n.9.)

Plaintiffs' argument is foreclosed by precedent from the Court of Appeals, the Supreme Court, this Court, and the Court's prior opinion granting Defendants' first motion to dismiss. The Court of Appeals, relying on the Supreme Court's analysis in Dole Food Co., held that agency or instrumentality status under TRIA must be determined "at the time Plaintiffs' complaints were

14

filed." <u>Kirschenbaum</u>, 830 F.3d at 136. In <u>Dole Food Co.</u>, the
Supreme Court held that for purposes of removal, instrumentality
status must be determined "at the time suit is filed" rather
than at the time the alleged tort occurred, a conclusion that
was in line with the "longstanding principle that the
jurisdiction of the Court depends upon the state of things at
the time of the action brought." 538 U.S. at 478 (quotation
marks and citations omitted). Citing these cases, this Court
previously held that Plaintiffs failed to meet their obligation
at the pleading stage to "allege that Alavi and 650 Fifth Avenue
were agencies or instrumentalities of Iran as of the filing of
the Complaint." (August 2022 Order at 12.)

Plaintiffs write that neither the Court of Appeals in
<u>Kirschenbaum</u> nor this Court in its August 2022 Order specified
which complaint anchored this timing requirement; the complaint
Plaintiffs filed against Iran in the United States District
Court for the District of Columbia in 2005 or the Complaint
Plaintiffs filed in this Court commencing this judgment
enforcement action. (Pl. Opp. at 12-13.) In addition, Plaintiffs
assert that <u>Dole Food Co.</u> is consistent with tying a timing
requirement for agency or instrumentality allegations to the
complaint in the underlying action against Iran. (<u>Id.</u> at 13-14.)
<u>Dole Food Co.</u> concerned a timing choice between the time the
alleged tort occurred and the filing of the complaint. 538 U.S.

at 471. Plaintiffs argue that the Supreme Court's choice of the time the complaint was filed instead of the time the alleged tort occurred does not determine the choice between the two potentially relevant complaints filed in this action. (Pl. Opp. at 14.)

Contrary to Plaintiffs' assertions, in its August 2022 Order, the Court identified Plaintiffs' February 2017 Complaint as the one relevant to its analysis. (August 2022 Order at 11-12.) In addition, the Court's reliance on Kirschenbaum and Dole Food Co., (id. at 10, 12), should have made it clear to Plaintiffs that the Court interpreted these precedents as requiring that Plaintiffs allege facts regarding Defendants' agency or instrumentality status as of the February 2017 Complaint. Further, this conclusion is in line with other instances in which this Court has considered timing requirements for TRIA pleading standards. See Calderon-Cardona v. JPMorgan Chase Bank, 867 F. Supp. 2d 389, 396 (S.D.N.Y. 2011) ("[T]he most natural reading of TRIA § 201(a) is that it requires a judgment debtor to be a 'terrorist party' both at the time of the underlying judgment and at the time of the enforcement proceeding.").

Finally, the Court holds that the new allegations in Plaintiffs' AC do not meet their obligation to allege facts

regarding Defendants' agency or instrumentality status as of the
date that Plaintiffs' February 2017 Complaint was filed. While
Plaintiffs bear "no evidentiary burden" on a facial Rule
12(b)(1) motion to dismiss, Carter, 822 F.3d at 56, Plaintiffs
must allege facts that "affirmatively and plausibly" suggest
that they have standing to sue, and the Court "need not credit a
complaint's conclusory statements without reference to its
factual context," Soule, 57 F.4th at 50 (quoting Conn. Parents
Union, 8 F.4th at 172). The Court finds that the allegations in
Plaintiffs' AC amount to more of the same "historical
allegations" and "conclusory present-tense recitals" that the
Court found insufficient in its August 2022 Order. (August 2022
Order at 12; see, e.g., AC ¶¶ 17 ("Levin TRIA Defendants at all
relevant times, including 2008 to the present, are agencies or
instrumentalities of Iran under TRIA"), 25 (factual summary from
Kirschenbaum), 64-65 (saying that evidence from In re 650 Fifth
Avenue and Related Properties, 08-CV-10934 (KBF), 2017 WL
3834795 (S.D.N.Y. Sept. 1, 2017) supports the assertion that
"Alavi is a front for Iran in the United States and that it has
longstanding connections with Iran and Iran's sponsorship of
terrorist activities."[4]).) Plaintiffs' historical and conclusory
allegations do not meet the required pleading standard under

---

[4] The complaint in this action was filed in 2009.

Rule 12(b)(1). Thus, the Court holds that Plaintiffs have failed to allege sufficient facts regarding Defendants' agency and instrumentality status.[5] Defendants' motion to dismiss is <u>GRANTED</u> with respect to the TRIA claims.

### C. **CPLR §§ 5225 and 5227**

While the AC reasserts Plaintiffs' New York CPLR claims, the Defendants argue that Plaintiffs unambiguously stated their intent to abandon these claims on two occasions. (Def. Br. at 18-19; <u>see also</u> dkt. no. 167 at 3, n.1; dkt. no. 185-1 at 1.) Plaintiffs challenge Defendants' reading of Plaintiffs' statement in docket number 167, dated September 13, 2019. Plaintiffs wrote:

> The Levins' remaining claims against Defendants are under New York Civil Practice Law and Rules 5225(b) and 5227, Section 201 of TRIA, and 28 U.S.C. § 1610(b). The Levins are now willing to waive the FSIA § 1610(a) claim, which means, they will have the same TRIA cause of action only, as do the Kirschenbaum plaintiffs.

(Dkt. no. 167 at 3, n.1.) The other document that Defendants cite is an email sent by Plaintiffs' Counsel on February 11, 2020. (Dkt. no. 185-1.) In the email thread, Defendants' Counsel wrote to Plaintiffs' Counsel, citing the above passage from docket number 167 and saying, "we assume that the only live claims (at least as of now) are the TRIA claims. If the

---

[5] This finding also makes Plaintiffs' allegations insufficient regarding the separate but related TRIA requirement that Defendants' assets be blocked as defined under TRIA.

<u>Kirschenbaum</u> motion to vacate is denied, you may wish to amend
the complaint and make clear that the Levins are only proceeding
on the TRIA claim." (<u>Id.</u> at 2.) Plaintiffs' Counsel's response
reads in relevant part:

> We are not going to pursue anything other than our TRIA
> claim. However, there is no need to amend our complaint.
> We have already filed a paper with the Court that we are
> only pursuing TRIA, and we will not change that position
> if in some unlikely case, the Court requires us to
> proceed on our own.

(<u>Id.</u> at 1.)

Plaintiffs claim their intent with these statements was to
"place themselves in the same pleading posture as the
Kirschenbaums" following the ruling in <u>Havlish v. 650 Fifth</u>
<u>Avenue Company</u>, 934 F.3d 174 (2d Cir. 2019). (Pl. Opp. at 3.)
Defendants correctly point out that "the only claim remaining to
the Kirschenbaums and the other Iran Creditors following the
<u>Havlish</u> decision is a claim under the TRIA." (Def. Reply at 10;
<u>see also</u> <u>Havlish</u>, 934 F.3d at 177.) As such, Defendants count
Plaintiffs' statement in their opposition papers as more
evidence of Plaintiffs' intent to abandon these New York CPLR
claims. Finally, Defendants note that Plaintiffs' opposition
fails to respond to Defendants' arguments as to why the New York
CPLR claims should fail on the merits, (<u>see</u> Def. Br. at 19
(asserting the FSIA and TRIA are the only means of bringing a
claim against an alleged foreign sovereign or its agency or

instrumentality)), and argue that this failure to respond creates additional grounds for the Court to find that Plaintiffs abandoned their New York CPLR claims, (see Def. Reply at 10, n.7 (citing Felix v. City of New York, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal citations and quotation marks omitted)))). The Court agrees with Defendants that Plaintiffs' statements and failure to respond to Defendants' arguments demonstrate Plaintiffs' unambiguous intent to abandon their New York CPLR claims. Defendants' motion to dismiss is GRANTED with respect to the New York CPLR claims.

## IV.  **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Because Plaintiffs were aware of the deficiencies in their Complaint when they filed the AC and their subsequent amendments failed to address these deficiencies, Defendants' motion is granted with prejudice. See Kling v. World Health Org., 532 F. Supp. 3d 141 at 153 (citing Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 257-58 (2d Cir. 2018) ("[i]n general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend").

The Clerk of the Court shall close the open motion (dkt. no. 215) and close case number 17-CV-959.


**SO ORDERED.**

Dated:      June 5, 2023
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge